IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| TIMOTHY GRANT | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:11cv372 |
| JOHN WISENER, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Timothy Grant, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights in the Texas Department of Criminal Justice, Correctional Institutions Division. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

As Defendants in his lawsuit, Grant named Warden John Wisener, Captain Danny Taliaferro, Officer Corbett Randall, Officer Dan Gannon, and Cheryl Lawson. Of these, Gannon, Lawson, and Wisener have been previously dismissed.

Grant complained of an incident which took place on July 14, 2009, in which all of the inmates leaving the Coffield Unit law library were subjected to a strip search. He asserted that the search was unreasonable and that it was conducted "as a condition to his leaving the law library," indicating that the search may have been done in retaliation for the inmates' presence in the library. He acknowledged, however, that there was an on-going "training exercise" involving on-the-job trainees, who conducted a search of the library itself, and a search of the library was also done by a canine team.

The Defendants Randall and Taliaferro filed a motion for summary judgment arguing that: there was a unit-wide shakedown going on; the search was reasonable under the circumstances; strip

1

searches are routinely carried out at the Coffield Unit; Grant has only a minimal expectation of privacy; there was no evidence of retaliation; the search was not carried out in an unreasonable manner; Grant cannot show recoverable compensatory or punitive damages; and, the Defendants are entitled to qualified immunity.

Grant filed a response to the motion for summary judgment arguing that: while some inmates at Coffield may be subject to frequent strip searches, he is not; there was not a unit-wide shakedown going on, as the Defendants claimed; prison officials cannot retaliate against inmates for exercising constitutional rights; there have historically been incidents against prisoners who are "so-called writ writers;" he was strip searched as a condition of leaving the law library, which is a violation of TDCJ policy; there was no penological need for the strip search; a 1980 court decision stated that strip searches conducted during law library visits was "unwarranted harassment;" and, the defendants are not entitled to qualified or official immunity.

After review of the pleadings and the summary judgment evidence, the Magistrate Judge issued a Report recommending that the Defendants' motion for summary judgment be granted and that the lawsuit be dismissed. The Magistrate Judge determined that Grant's claims fell into five categories: (1) "unwarranted retaliatory harassment," (2) "unreasonable strip search;" (3) "the implementation and / or carried out a policy that resulted in violation of plaintiff's clearly established constitutional rights;" (4) "failure to act affirmatively," and (5) "inadequate training procedures that caused the constitutional violation with callous and conscious deliberate indifference of the defendant's [sic] constitutional rights." In considering these claims, the Magistrate Judge concluded that: Grant had failed to show either retaliatory intent or causation; the strip search was not unreasonable under the circumstances, which included a comprehensive search of the law library as well as the inmates who were there; the search did not impose atypical or significant hardships in relation to the ordinary incidents of prison life; Grant failed to identify an unconstitutional policy which violated his clearly established constitutional rights; Grant failed to show that it was a "known or obvious consequence" that the strip search would result in a violation of his constitutional rights;

2

and, Grant failed to set forth a valid claim on a theory of failure to train or supervise. The Magistrate Judge also concluded that the Defendants were entitled to qualified immunity.

In his pleadings, Grant referred to an affidavit from Warden Rupert which supposedly said that there was no record of a unit-wide shakedown or lockdown on the date in question. He stated that he had filed this affidavit with his response to the motion for summary judgment; however, the Magistrate Judge observed that there was no such affidavit in the record. The Magistrate Judge went on to note that even if it was true that there was no unit-wide shakedown or lockdown on the date in question, as Grant claimed that this purported affidavit had said, Grant's claims nonetheless lack merit: in this regard, the Magistrate Judge stated as follows:

> Even disregarding the evidence of a unit shakedown, however, and assuming the truth of Grant's assertion that there was no ongoing unit shakedown, Grant has still failed to show that the strip search conducted was unreasonable. While the whole unit may not have been undergoing a lockdown or a shakedown, as Grant asserts, his pleadings make clear that there was a comprehensive search of the law library, which included a canine team and a group of on-the-job trainees. Grant acknowledges that the trainees were instructed to take books off the shelves at random and page through them looking for contraband. The strip search of the inmates who had been in the library was ordered as part of this comprehensive search.

Grant received a copy of the Magistrate Judge's Report on January 31, 2013. He filed a motion for extension of time in which to file objections, which was granted to March 18, 2013.

On March 13, 2013, Grant filed a "motion to consider extension of time as a motion for continuance," together with a motion to supplement his motion in opposition to the Magistrate Judge's Report and a motion for copies of affidavits. In his motion for continuance, Grant says that the allegedly missing affidavit is "necessary to correct manifest errors of law and fact" and states that he "cited the exact location of the document within the disclosure exhibit."[1]

Grant argues that the test of reasonableness under the Fourth Amendment is not capable of precise definition, but that in each case it requires a balancing of the need for the search against the

---

[1] Grant says that the affidavit was Exhibit C-2 in the defendants' notice of disclosure, filed May 9, 2012. The entry on the docket for that date is simply a notice of disclosure, which has no exhibits attached.

3

invasion of personal rights. He points to Moore v. Carwell, 168 F.3d 234, 237 (5th Cir. 1999). although that case centered around a cross-gender search which is not at issue in the present case, and Elliott v. Lynn, 38 F.3d 188 (5th Cir. 1994). He argues that the claim of a unit-wide shakedown is an "essential element" but that his affidavit refuting this claim is now missing.

Furthermore, Grant says that he "filed the original complaint June 24, 2009 [sic] with two affidavits from offenders Michael Lane and Joe Ruth. The Magistrate Judge failed to consider either affidavit (see bottom of page 4 of Plaintiff's Response."

In his motion to supplement (docket no. 104), Grant says that he mailed his response to the Defendants' motion for summary judgment, which contained his only copy of Warden Rupert's affidavit, through the TDCJ mailroom. He also refers to the affidavits from Lane and Ruth attached to his original complaint. He asks that when these documents become available, he be allowed to supplement his motion with them.

In a motion for copies, Grant asks that the Court provide him with copies of these documents, although the purported affidavit from Rupert is not in the record and therefore cannot be provided.

As the Magistrate Judge made clear, the purported affidavit from Warden Rupert does not create an issue of material fact; even accepting the truth of Grant's assertion that there was no unit-wide shakedown or lockdown, with or without this affidavit, Grant failed to show that the search was unreasonable. The evidence shows and Grant does not dispute that the strip search of the inmates was carried out in the context of a larger search of the law library, which search included the use of dogs and incorporated a training exercise for on-the-job trainees. Grant offers nothing to refute Captain Taliaferro's affidavit stating that strip searches are more effective means of discovering contraband than pat searches, and Grant's evidence showing that he is not routinely strip searched indicates that this particular search was carried out as part of an unusual event, which was the comprehensive search of the law library. Whether or not there was a unit-wide shakedown going on at the same time simply has no bearing on the fact that the search of the law library and the inmates therein was reasonable under the circumstances.

4

The affidavit from Michael Lane, attached to Grant's original complaint, describes the search of the law library as carried out by "drug dogs," which interrupted the law library session at 9:25 a.m., and says that the dogs were searching for "drugs planted by building security under orders of Captain Taliaferro." When the dogs were unable to locate the drugs, they were led to sniff the inmates, and when the dogs were still unable to locate the drugs, all of the inmates were ordered to leave the law library before their session was over. An officer named Whitten then had the strip search conducted after the dog handler recovered and secured the controlled substances.

This affidavit is markedly different from Grant's version of events in a number of particulars. In his complaint, Grant says nothing about being ordered to leave before the session was over, but states that "at 09:55, the end of the legal session, all offenders had to turn in their books, sign out, and be pat-searched as a condition to depart." He goes on to state that Taliaferro asked Gannon what was going on and, when Gannon told him, Taliaferro said "no, I want them strip searched." In addition, Lane does not state how he has personal knowledge that the dogs were searching for drugs or that these drugs were recovered before the strip searches were conducted, particularly in light of the fact that all of the inmates had presumably been ordered to leave the law library before this discovery took place.

In any event, Lane's affidavit, even if presumed correct, wholly fails to show that the strip searches were unreasonable. Even assuming that drugs planted in the law library had all been discovered before the strip search took place, this does not make it unreasonable for officers to conduct a comprehensive search of inmates in the law library at the same time that they conducted a comprehensive search of the law library itself. The Supreme Court has stated that "deterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions" and that "to advocate that prison searches must be conducted only pursuant to an enunciated general policy or when suspicion is directed at a particular inmate is to ignore the realities of prison operation." Hudson v. Palmer, 468 U.S. 517, 529 (1984); *accord*, Florence v. Board of

Chosen Freeholders of the City of Burlington, 132 S.Ct. 1510, 1517 (2012). Grant's reliance on Lane's affidavit is misplaced.

Grant also refers to the affidavit of an inmate named Joe Ruth. This affidavit simply says that Ruth was present in the law library when a security staff led by Officer Whitten conducted a shakedown of the law library and pat-searched the offenders. After exiting the courtyard of the law library, Taliaferro ordered the inmates to be stripped naked and searched for contraband. The search was conducted by Whitten and a group of on-the-job trainees.

This affidavit is essentially the same as the version of events set out by Grant, except that it does not mention Officer Randall as having been involved in the search. Ruth's affidavit presents nothing from which it may be concluded that the search was unreasonable or that it was done in retaliation; rather, this affidavit tends to confirm that after the search of the law library itself, Taliaferro decided to conduct a more comprehensive search of the inmates who had been in the law library than a simple pat search. Neither Lane's nor Ruth's affidavits demonstrate that the Magistrate Judge's conclusions were in error.

Although Grant cites Bell v. Wolfish, 441 U.S. 520 (1979), the Magistrate Judge observed that this case upheld a policy of conducting strip searches after every contact visit with a person from outside the institution; the Supreme Court noted the dangers posed by contraband and stated that strip searches could be effective as a deterrent.

Grant also cites U.S. v. Lilly, 576 F.2d 1240 (5th Cir. 1978), *abrogated on other grounds by* Hudson, 468 U.S. at 523 and n.5, as saying that searches must be reasonable under all of the facts and circumstances under which they are performed. This is generally a correct statement of the law; in the present case, as the Magistrate Judge explained, the search conducted was reasonable under all of the facts and circumstances. The Fifth Circuit has explained that proving reasonableness is a "light burden" because prison administrators' decisions and actions are entitled to great deference from the courts. Elliott v. Lynn, 38 F.3d at 191.

In analyzing the reasonableness of the searches, the district court is required to balance the need for the searches against the invasion of personal rights that the searches entailed by considering the scope of the intrusions, the manner in which they were conducted, the justification for them, and the places in which they were conducted. Waddleton v. Jackson, 445 Fed.Appx. at 809, *citing* Watt v. City of Richardson Police Department, 849 F.3d 195, 196-97 (5th Cir. 1988); Elliott, 38 F.3d at 191. The Magistrate Judge reviewed this balancing test and concluded that according to the competent summary judgment evidence, the searches were needed as part of a comprehensive search of the law library and the inmates using it, carried out in connection with the Coffield Unit's policies concerning the halting of the flow of contraband. While this search may have been intrusive, Grant failed to show that it was unreasonably so, and Grant does not dispute Taliaferro's assertion that the searches were carried out in a professional manner.

The affidavits of Grant and Lane indicate that they are not routinely strip searched. As the Magistrate Judge properly concluded, this fact indicates that this particular response by the prison officials to the on-going problem of contraband was not exaggerated, but was reasonably tailored to meet the goal of a comprehensive search of the law library on that day, including a thorough search of the inmates who were there at the time. The Magistrate Judge correctly concluded that Grant offered no evidence of retaliatory intent nor that any constitutionally protected liberty interest was infringed.

Instead, Grant places considerable emphasis on his claim that the search was conducted "as a condition for his leaving the law library." The Magistrate Judge determined that the only evidence offered in support of this claim was the simple fact that the inmates were searched at the end of the law library session, as they were leaving. This fact does not by itself show that the search was done as a "condition" of leaving the law library. While it is true that TDCJ Access to Courts Policy ATC-030 states that "an offender will not be strip searched as a condition of entering or exiting the law library, unless there is reasonable cause to believe that the inmate is in possession of contraband," the Magistrate Judge correctly stated that even had this policy been violated, the violation of prison

policies alone does not give rise to a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986).[2]

Although Grant argues for a continuance to secure additional evidence, he has failed to show that the evidence which he seeks is relevant. The affidavits of Lane and Ruth offer nothing supportive of his claims, and the Magistrate Judge properly determined that even if Grant was correct in stating that there was no unit-wide shakedown, as the purported affidavit of Warden Rupert attests, this fact would not show that the search of the law library and the inmates therein was unreasonable.

A "genuine issue of material fact" means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). In this case, the affidavit of Warden Rupert, confirming Grant's claim that there was no unit-wide shakedown or lockdown, would not demonstrate any "genuine issue of material fact" because even assuming the truth of this assertion, the search of the law library and the inmates therein was not unreasonable or a violation of Grant's constitutionally protected rights. Grant has thus shown no basis upon which to grant a continuance to allow him to obtain evidence which has no bearing on the outcome of the case.

Grant has had ample time in which to file objections to the Report of the Magistrate Judge, and the Court has reviewed his pleadings and motions challenging this Report as being objections thereto. Upon such *de novo* review of these objections, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 89) is ADOPTED as the opinion of the District Court. It is further

---

[2]In addition, as the Magistrate Judge said, a blanket rule that inmates could not be strip searched upon leaving the law library would amount to a "predictable exception" to the strip search policy, and the Supreme Court stated in Florence that strip searches need not be done at predictable times.

8

ORDERED that the Defendants' motion for summary judgment (docket no. 55) is hereby GRANTED and the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**It is SO ORDERED.**

**SIGNED this 22nd day of March, 2013.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE